Robert MILLER, Petitioner,

v.

HALLIBURTON SERVICES, Highlands
Insurance Company, and The Industri-
al Commission of the State of Colora-
do, Respondents.

HALLIBURTON SERVICES and
Highlands Insurance Company,
Petitioners,

v.

Robert MILLER and The Industrial
Commission of the State of
Colorado, Respondents.

Nos. 80CA0407, 80CA0430.

Colorado Court of Appeals,
Div. II.

April 19, 1984.

Rehearing Denied June 7, 1984.

Certiorari Granted Sept. 24, 1984.

George T. Ashen, James E. Freemyer, Denver, for Robert Miller.

Knapp & Lee, Byrum C. Lee, Jr., Denver, for Halliburton Services and Highlands Ins. Co.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Christa Taylor, Asst. Atty. Gen., Denver, for Indus. Comn.

BABCOCK, Judge.

Halliburton Services, employer, and Highlands Insurance Company, insurer, seek review of a final order of the Industrial Commission finding that claimant, Robert Miller, suffered a compensable accident and awarding him permanent partial and temporary total disability benefits. Claimant seeks review of that portion of the order allowing the employer credit under 1971 Perm.Supp., C.R.S.1963, 81–12–9(3)(a) (repealed Cum.Supp., C.R.S.1983) for having continued to employ the claimant after his disability occurred. We affirm in part and set aside in part.

In December of 1971, claimant was treated surgically for a herniated disk which he developed while employed by Halliburton Services. Claimant received medical benefits and income benefits over the next year totalling $7,921.89 under employer's "Sickness Benefit Plan," a health and disability insurance plan covering only non-work related disabilities.

On November 16, 1976, claimant filed a "Petition to Re-Open Claim" alleging that his condition had worsened. On August 28, 1978, following a hearing before the Division of Labor, claimant was found to be suffering from a 5 percent permanent partial disability attributable to an accident occurring on November 6, 1971. The hearing officer found that the applicable statute of limitations for such claims, 1971 Perm. Supp., C.R.S.1963, 81–13–5 (amended § 8–52–105(2), C.R.S. (1983 Cum.Supp.)), had been tolled by the employer's failure to file a report of the accident.

By a supplemental order of February 2, 1979, the hearing officer ruled that the employer and insurance carrier were not entitled to any off set against the workmen's compensation award for the amounts paid under the Sickness Benefit Plan. In a second supplemental order dated April 17, 1979, the hearing officer ruled that the employer and insurance carrier were not entitled to credit under 1971 Perm.Supp., C.R.S.1963, 81–12–9(3) for having continued the disabled employee at work at the employee's normal rate of pay.

On March 21, 1980, the Industrial Commission affirmed the hearing officer's award of permanent partial disability benefits and determination that the employer and insurance carrier were not entitled to a set off for payments made under the employer's health plan, but reversed the hear-

ing officer as to the applicability of the 1971 Perm.Supp., C.R.S.1963, 81–12–9(3)(a) set off.

Following a petition for review of the final order of the Commission, the case was remanded by this court on October 9, 1980, for additional findings on various factual issues relevant to the employer's and insurer's right to claim an offset against claimant's compensation award. After additional hearings, the hearing officer entered an order on April 7, 1982, awarding claimant 16.4 percent permanent partial disability benefits and disallowing a set off.

On January 20, 1983, the Industrial Commission entered a final order finding that the hearing officer had exceeded the scope of the remand in altering the percentage of permanent partial disability. The Commission therefore vacated the hearing officer's order to the extent that it purported to modify the award of permanent partial disability benefits, affirmed the earlier 5 percent permanent partial disability award, affirmed the hearing officer's determination that the payment under the Sickness Benefit Plan could not be credited or offset against the liability for temporary disability benefits payable to claimant, affirmed the determination that the claim was not barred by any statute of limitations, and determined that the employer was entitled to a set off pursuant to 1971 Perm.Supp., C.R.S.1963, 81–12–9(3)(a) because the employer continued claimant in employment in lieu of payment of an award.

## I.

On review, employer and insurer first contend that the Commission erred in its determination that claimant suffered an industrial accident on November 6, 1971. They advert to various accident reports filed by claimant at the time of the 1971 surgery, all of which state that his herniated disk was not attributable to an industrial accident, and to certain inconsistencies in claimant's testimony.

■ Resolution of conflicts in the evidence and determination of the credibility of witnesses are matters committed to the discretion of the Industrial Commission. *Lamb v. Industrial Commission*, 662 P.2d 191 (Colo.App.1983). Here, claimant testified that he suffered an industrial accident, and there was medical testimony that claimant's disability was the result of an accident occurring on November 6, 1971. This evidence was sufficient to support the findings of the Commission.

## II.

■ Employer and insurer contend next that claimant's claim is barred because it was not filed within the one-year limitation period set forth in 1971 Perm.Supp., C.R.S. 1963, 81–13–5(2) (amended § 8–52–105, C.R.S. (1983 Cum.Supp.)). We note initially that the rights and liabilities of the parties are determined by the statute in effect at the time of claimant's injury. *Eight Thousand West Corp. v. Stewart*, 37 Colo.App. 372, 546 P.2d 1281 (1976).

Section 81–13–5(2) provided that a claimant's right to benefits:

"[S]hall be barred unless within one year after the injury ... a notice claiming compensation shall be filed with the Commission. ... but in all cases in which the employer has been given notice of an injury and fails, neglects, or refuses to report said injury to the division as required by the provisions of this chapter, this statute of limitations shall not begin to run against the claim of the injured employee ... until the required report shall have been filed with the division."

■ Here, it was undisputed that employer did not file an accident report. Employer and insurer argue, however, that the evidence was overwhelming that claimant gave no notice to the employer that he had suffered an industrial accident in 1971, but instead obtained benefits under the Sickness Benefit Plan by representing to employer that his injury was not the result of an industrial accident. Employer and insurer argue that the absence of any evidence that claimant reported the accident to employer other than his own testimony

requires reversal of the Commission's determination that employer was on notice of the accident. We disagree.

■ An appellate court may not substitute itself as a trier of fact. *Lamb v. Industrial Commission, supra.* Since claimant's testimony was sufficient, if believed, to establish that notice was given to employer, the finding that such notice was given may not be set aside. Accordingly, the Commission's determination that the applicable statutory limitation period was tolled by the failure of the employer to file an accident report with the division must be affirmed.

### III.

Employer and insurer contend next that there was insufficient evidence to support the Commission's determination that claimant suffered 5 percent permanent partial disability because there was evidence that claimant's hourly wage was higher after his accident than before. We disagree.

■ The pertinent statute, 1971 Perm. Supp., C.R.S.1963, 81–12–9(1)(b) (now § 8–51–108(1)(b), C.R.S. (1983 Cum.Supp.)), provided that in determining permanent partial disability, the Commission should take into consideration the "general physical condition and mental training, ability, former employment, and education of the injured employee." The Commission is vested with the widest possible discretion in determining the percentage of disability of an injured worker from these factors. *Southwest Investment Co. v. Industrial Commission,* 650 P.2d 1355 (Colo.App.1982).

■ Here, there was medical testimony that claimant suffered from a 7½ percent physical disability as a working unit. It was undisputed that claimant's injury forced him to stop working as a cementer and transfer to a job as a dispatcher, and that claimant's wages were $2.70 per hour as a cementer and $3.33 per hour as a dispatcher. However, it was also undisputed that claimant was guaranteed a 60 hour week as a cementer, but only a 48 hour week when he returned to work as a dispatcher and that claimant's actual earnings

declined by approximately 16 percent. This evidence was sufficient to support the Commission's determination that claimant suffered 5 percent permanent partial disability.

### IV.

■ Employer and insurer contend next that they are entitled to credit for payments received by claimant under the Sickness Benefit Plan. The sole authority cited by employer and insurer for this proposition is 1971 Perm.Supp., C.R.S.1963, 81–12–1(5) (now § 8–51–101(1)(d), C.R.S. (1983 Cum.Supp.)), which provided for a reduction in permanent partial disability payments by an amount equalling the "periodic disability benefits payable to the employee under the provisions of a pension plan financed in whole or in part by the employer."

Employer and insurer cite no authority for the proposition that the sickness and disability insurance plan under which claimant received benefits following his 1971 surgery constitutes such a pension plan. While our Supreme Court ruled in *Myers v. State,* 162 Colo. 435, 428 P.2d 83 (1967) that annuity plans come within the scope of the phrase "disability pension," nothing in the language of the statute or in the opinions construing it indicate any intent on the part of the General Assembly to extend the statutory set off provision to health insurance benefits.

### V.

Claimant contends that the Commission erred in its application of 1971 Perm.Supp., C.R.S.1963, 81–12–9(3)(a). We agree.

Section 81–12–9(3)(a) stated that:

"[W]here the final award shall result in a finding of permanent partial disability of 5 percent or less as a working unit the employer may, in lieu of paying said limited benefits for permanent partial disability ... continue the disabled employee at work in the employment of the employer at the employee's normal rate of pay upon date of temporary or permanent disablement, and extend to the employee wage and promotional advantages, during such period of time, to

which the employee would have been entitled had the employee not become disabled from an accident."

The method for calculating the average weekly wage of an injured employee is set forth in 1969 Perm.Supp., C.R.S.1963, 81–8–1 (now § 8–47–101, C.R.S.). From this calculation, the injured employee's "normal rate of pay" is determined by his total weekly earnings rather than his hourly rate of pay.

■ Here, as discussed above, the evidence established that claimant's average weekly earnings substantially declined following his injury. Therefore, the employer is not entitled to the § 81–12–9(3)(a) set off.

The order of the Industrial Commission is affirmed as to the award of 5 percent permanent partial disability and temporary total disability and as to the determination that petitioners are entitled to no set off for payments made under Sickness Benefit Plan. The order is set aside as to the determination that employer is entitled to a set off pursuant to § 81–21–9(3)(a), and the cause is remanded with instructions to strike that portion of the final order providing for such set off.

BERMAN and KELLY, JJ., concur.